UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Marvin Freedman, | § § § | |
| *Plaintiff,* | § § | |
| | § | Case No. 4:23-cv-02204 |
| v. | § § | |
| Shellpoint Mortgage Servicing, | § § | |
| *Defendant.* | § § | |

## MEMORANDUM AND RECOMMENDATION

Several motions are pending in this case. All were referred to the undersigned judge. *See* Dkt. 34.

First, Plaintiff Marvin Freedman submitted a document that, although docketed as a "motion," is in substance an answer to the general denial filed by Defendant Shellpoint Mortgage Servicing ("Shellpoint") before the case was removed. *See* Dkt. 20 (responding to original answer, Dkt. 1-3). Because this filing is a pleading not contemplated by the Federal Rules, *see* Fed. R. Civ. P. 7(a) (permissible pleadings), it will be terminated.

Second, Freedman filed a motion for sanctions under Fed. R. Civ. P. 11, Dkt. 21, and a separate motion for extension of time to effectuate service of process, Dkt. 27. Shellpoint responded to both motions. Dkt. 25, 29. The Court denies both the motion for sanctions and the request for extension.

Third, Shellpoint filed a motion for summary judgment. Dkt. 26. Freedman did not respond, which means that the motion is deemed unopposed. *See* S.D. Tex. L.R. 7.4. After carefully considering the motion, record, and the applicable law, it is recommended that summary judgment be granted.

## Background

This is a mortgage dispute over a property at 15019 Cozy Hollow Lane in Houston, Texas (the "Property"). When Freedman purchased the Property in 2006, he executed a promissory note and deed of trust in favor of Priority Home Mortgage, L.P. Dkt. 26-2 (DX-A-1); Dkt. 26-3 (DX-A-2). The next year, the lender's nominee, Mortgage Electronic Systems, Inc. ("MERS"), executed an assignment transferring both the note and deed of trust to Wells Fargo Bank, N.A. ("Wells Fargo"). Dkt. 26-4 (DX-A-3 at 1, July 19, 2007 assignment). The document was recorded in the real property records of Harris County, Texas, where the Property is located. *See* Dkt. 26-4 at 3-4, 7-8.

In 2015, Freedman and Wells Fargo executed a loan modification agreement that was recorded in the real property records. *See* Dkt. 26-5 (DX-A-4, July 22, 2015 loan modification). But starting in May 2020, Freedman stopped making his monthly payments. Dkt. 26-1 at 5 (DX-A, Affidavit of Shannon Bush).

In 2022, Wells Fargo assigned the deed of trust to U.S. Bank Trust National Association, as Owner Trustee for VRMTG Asset Trust ("U.S. Bank

2

Trust"). Dkt. 26-6 (DX-A-5, December 20, 2022 assignment). The assignment was duly recorded in the real property records. *See id.* at 2-3.

Shellpoint, as the mortgage servicer for U.S. Bank Trust, *see* Dkt. 26-1 at 2, sent Freedman both a notice and a letter dated December 21, 2022. Dkt. 26-14 (DX-A-13); Dkt. 26-15 at 1-2 (DX-A-14). Whereas the notice advised Freedman that loan servicing had been transferred to Shellpoint, Dkt. 26-14 at 1, the letter told Freedman that he was behind on his payments and disclosed the possibility that he could qualify for a COVID-19 forbearance or other options for relief, Dkt. 26-15 at 1. The letter also provided contact information for obtaining additional information about potential avenues for avoiding foreclosure. *See* Dkt. 26-15 at 2.

The next month, Shellpoint sent another letter stating that Freedman's forbearance plan had ended. Dkt. 26-15 at 25. The letter advised Freedman to contact Shellpoint for potential options. *Id.* Two weeks later, Shellpoint sent another letter inviting Freedman to request further information about options for his loan. *See* Dkt. 26-15 at 27.

In February 2023, Shellpoint sent Freedman a notice of default via certified mail to his last known address, *see* Dkt. 26-7 (DX-A-6). The notice advised Freedman that, to cure the default, he must pay $90,134.46, comprising the total overdue monthly payments, plus late charges and fees, by March 21, 2023. *See id.* at 3-4. Shellpoint followed that letter with various

3

correspondence indicating it had been unable to contact Freedman, acknowledging Freedman's inquiries, advising him of potential options, providing a single point of contact for his inquiries, and warning him about his default. *See* Dkt. 26-15 at 31-104.

In a certified mailing dated April 19, 2023, Shellpoint sent Freedman a Notice of Acceleration and Notice of Posting & Foreclosure. Dkt. 26-8 (DX-A-7). Shellpoint followed that with another certified mailing of a similar notice dated May 12, 2023. *See* Dkt. 26-9 (DX-A-8).

On the eve of the scheduled June 6, 2023 foreclosure sale, Freedman filed this suit against Shellpoint in state court. *See* Dkt. 1-3 at 1, 3 (June 5, 2023 original petition). The same day, Freedman obtained a temporary restraining order to halt the sale for a fourteen-day period. *See id.* at 18-20. Unaware of those proceedings,[1] Shellpoint proceeded with the foreclosure sale on June 6, 2023. *See* Dkt. 26-13 (DX-A-12). But Shellpoint apparently learned of the suit thereafter and, on June 15, 2023, filed both an answer and its notice of removal to this Court. *See* Dkt. 1-3 at 22 (original answer); Dkt. 1 (notice of removal). A few days later, Shellpoint rescinded the foreclosure sale. *See* Dkt. 26-13 at 1-2 (DX-A-12, June 19, 2023 affidavit of rescission).

---

[1] Shellpoint was not served. *See* Dkt. 1 at 2; *see also* Dkt. 1-4 at 2 (docket sheet showing issuance of summons but no record of service).

4

In this Court, Shellpoint sought and was granted leave to file an amended answer. *See* Dkt. 8, 18, 19. Freedman responded with a filing, docketed as "motion," acknowledging Shellpoint's pleading and stating his intent to provide "strict proof ... to support our claims." Dkt. 20. In addition, Freedman filed a motion to remand, Dkt. 22, which this Court denied, Dkt. 33.

Freedman also filed a motion for sanctions under Fed. R. Civ. P. 11, asserting that Shellpoint's counsel had caused him to incur unnecessary expenses by unilaterally moving the June 15, 2023 state-court temporary injunction hearing to an earlier time, causing him to miss it. *See* Dkt. 21. Shellpoint filed a response, arguing that Freedman has not satisfied the procedural requirements for relief under Rule 11. Dkt. 25.

For its own part, Shellpoint filed a motion for summary judgment on all claims. Dkt. 26. Freedman did not respond. Instead, Freedman filed a motion for an extension of time to effectuate service of process. Dkt. 27. In response, Shellpoint noted that an extension was unnecessary because it has already appeared in the case. *See* Dkt. 29. All pending motions are ripe for resolution.

## Analysis

### I. Freedman's procedural and sanctions motions

The Court addresses Freedman's motions first. Neither Freedman's motion for sanctions nor his motion for extension merits relief.

5

### A. Rule 11 sanctions are not available.

Invoking Rule 11, Freedman seeks sanctions against Shellpoint because its counsel allegedly caused him to incur unnecessary expenses by rescheduling the temporary injunction hearing in state court. *See* Dkt. 21. Shellpoint maintains that Freedman failed to satisfy the strict requirements to obtain Rule 11 sanctions. The Court agrees with Shellpoint but further concludes that Rule 11 does not apply in this context.

"The federal rules do not apply to filings in state court, even if the case is later removed to federal court." *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000); *see also, e.g., Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (Federal Rules of Civil Procedure do not apply retroactively to "aspects of a case that occurred in state court prior to removal to federal court"); Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action *after* it is removed from a state court.") (emphasis added). As a result, Freedman's complaints about Shellpoint's actions in state court fall outside of Rule 11's purview.

Freedman's reliance on Rule 11 is further foreclosed both because it does not fit this circumstance, and because he has not satisfied its procedural requirements. Rule 11 sanctions are limited to violations of specific obligations. *See* Fed. R. Civ. P. 11(c) (specifying sanctions for violating Rule 11(b)). Those obligations concern a party's or attorney's submission of "a pleading, written motion, or other paper." *See id.* at 11(b). To obtain relief, a

6

party must serve its motion for sanctions on the offender at least 21 days before the motion is filed. *Id.* at 11(c)(2). Compliance with the pre-filing requirement is mandatory. *See Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995). This "safe harbor" provision is designed to give the offender an opportunity to rectify the asserted misstatement—and thus avoid sanctions—by withdrawing the offending pleading. *See Gen. Motors Acceptance Corp. v. Bates*, 954 F.2d 1081, 1086 (5th Cir. 1992) (Rule 11 motion should be filed "within a time frame that has a nexus to the behavior sought to be deterred") (quoting *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 881 (5th Cir. 1988)). Absent such an opportunity, Rule 11 sanctions cannot be imposed. *See Tompkins*, 202 F.3d at 788 (Rule 11 sanctions unavailable where motion was not filed "until after trial had concluded, thereby denying the Tompkinses a reasonable opportunity to correct their complaint").

Here, Freedman did not comply with the safe-harbor requirement by serving his motion on Shellpoint at least 21 days before filing it. Even if he had, Freedman's motion does not complain about misstatements or inaccuracies in a "pleading, written motion, or other paper" that Shellpoint could rectify by withdrawing the submission. *See* Fed. R. Civ. P. 11(b). There is no basis for imposing Rule 11 sanctions.

### B. No extension is warranted to effectuate service of process.

Separately, Freedman requests an extension of time to serve "Defendants." Dkt. 27. As Shellpoint notes, this request is moot because it is the sole defendant and has already appeared. *See* Dkt. 29 at 1-2.

The purpose of requiring service of process is to provide a defendant "reasonable notice of a lawsuit ... to ensure the defendant may have the opportunity, guaranteed under due process, to defend against claims made by the plaintiff." *Fin. Fed. Credit, Inc. v. Constr. Cans, Inc.*, 2010 WL 231754, at *1 (S.D. Tex. Jan. 20, 2010). Shellpoint has actively participated in this suit. It filed an amended answer in this Court and sought summary judgment on all claims. *See* Dkt. 19, 26. Moreover, Shellpoint did not object to the lack of service when filing its answer, which waives the objection. *See City of Clarksdale v. Bellsouth Telecommc'ns, Inc.*, 428 F.3d 206, 214 n.15 (5th Cir. 2005) (noting this principle, citing Fed. R. Civ. P. 12(h)(1)). There is no need for an extension to serve Shellpoint. And Freedman has not named any other defendants that he would need to serve. As a result, Freedman's motion for extension is denied.

### II. Shellpoint is entitled to summary judgment on Freedman's claims.

In its motion for summary judgment, Shellpoint argues that Freedman's claims for breach of contract, under the Texas Property Code § 5.065, and for

8

a declaratory judgment are barred. Dkt. 26 at 5, 9-10. Freedman's failure to respond means that the motion is deemed unopposed. *See* S.D. Tex. L.R. 7.4.

Nevertheless, the opposing party's failure to respond does not automatically entitle the movant to summary judgment in its favor. *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (noting this principle applies "even if the failure to oppose violated a local rule"). "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Id.*; *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 & n.3 (quoting *Hibernia*). The Court thus proceeds to analyze Shellpoint's contentions, bearing in any mind that all evidence and reasonable inferences must be viewed "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted).

### A. Freedman failed to raise a fact issue on his request for declaratory relief.

Shellpoint maintains, *see* Dkt. 26 at 5-8, and the Court agrees, that Freedman's declaratory judgment claim has multiple components. The availability of declaratory relief depends on whether Freedman can substantiate some other cause of action. *See Reyes v. N. Tex. Tollway Auth.*,

861 F.3d 558, 565 n.9 (5th Cir. 2017) (requests for declaratory relief "must be supported by some underlying cause of action").

Liberally construed, Freedman's petition asserts that Shellpoint cannot lawfully initiate foreclosure proceedings because (1) the deed of trust "was not assigned properly" to US Bank, and the assignments were not properly recorded, Dkt. 1-3 at 2, 5; (2) Shellpoint did not acquire or "perfect any security interest" in the note, *id.* at 3, 5; and (3) Shellpoint prepared or presented unspecified false or fraudulent documents, or engaged in unidentified "fraudulent, false, deceptive and/or misleading practices," *id.* at 5. Freedman also requests that the Court "quiet title" and void all documents reflecting Shellpoint's interest in the Property. *Id.* at 5. The Court thus reviews whether Freedman has raised a fact issue on his underlying claims.

### 1. As the mortgage servicer, Shellpoint had the authority to foreclose.

Settled law negates Freedman's position that Shellpoint cannot foreclose due to defects in the underlying assignments or its lack of ownership over the note. Under Texas law, a "mortgage servicer" can initiate a non-judicial foreclosure on behalf of a mortgagee, so long as the two have a mortgage-servicing agreement and the mortgagor (i.e., the borrower) is properly notified that the mortgage servicer represents the mortgagee. *See Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 343 (5th Cir. 2013); Tex. Prop. Code § 51.0025.

10

The term "mortgagee" includes "the grantee, beneficiary, owner, or holder of a security instrument" and "the last person to whom the security interest has been assigned of record." Tex. Prop. Code § 51.0001(4). The "mortgage servicer" is the "last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *Id.* § 51.0001(3).

Shellpoint qualifies as a "mortgage servicer" authorized to initiate non-judicial foreclosure. Shellpoint services the mortgage on behalf of US Bank Trust. *See* Dkt. 26-1 at 1-2. Shellpoint also notified Freedman when it began servicing the mortgage. *See* Dkt. 26-14 at 1. And US Bank Trust is the mortgagee because it obtained the deed of trust through a line of recorded assignments that originated with Priority Home Mortgage, L.P., passed to Wells Fargo, and then was assigned to US Bank Trust.[2] *See* Dkt. 26-4 at 1-4 (July 19, 2007 recorded assignment of note and deed of trust to Wells Fargo); Dkt. 26-5 (July 22, 2015 loan modification); Dkt. 26-6 (December 20, 2022 assignment of deed of trust to US Bank Trust).

---

[2] The Court further notes that non-parties to these assignments, including Freedman, cannot challenge the validity of the assignments absent proof that they were intended third-party beneficiaries. *See Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 228 (5th Cir. 2013) ("[U]nder Texas law, facially valid assignments cannot be challenged for want of authority except by the defrauded assignor."). Freedman neither alleges nor shows that he was a third-party beneficiary to the assignments of the note or deed of trust.

11

A mortgage servicer like Shellpoint "need not hold or own the note" to properly initiate a non-judicial foreclosure. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013). In any event, US Bank Trust, for whom Shellpoint acts as mortgage servicer, *does* hold the note, which was endorsed in blank. *See* Dkt. 26-1 at 5 (attesting that US Bank Trust "is in possession of the original, wet ink Note with all the attached unbroken chain of indorsements leading to an indorsement in blank"). Freedman has no factual or legal basis to challenge Shellpoint's foreclosure rights.

  2. <u>Freedman's allegations of fraudulent, false, deceptive, or misleading conduct are inadequate and unsubstantiated.</u>

The Court also agrees with Shellpoint that Freedman cannot obtain a declaratory judgment by alleging, without specifics, that it committed fraudulent, false, deceptive, or misleading conduct. As Shellpoint explains, Freedman failed to plead this theory with particularity. *See* Dkt. 26 at 7.

Allegations of fraud are subject to a heighted pleading standard. *See* Fed. R. Civ. P. 9(b). "Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). Although failure to satisfy Rule 9(b)'s pleading standard typically results in dismissal under Rule 12, "it may also serve as a basis for summary judgment." *Amex*

12

*Elec. Servs., Inc. v. Blanchard Ref. Co.*, 2020 WL 622792, at *5 (S.D. Tex. Jan. 15, 2020) (quoting *Martin v. Lennox Int'l Inc.*, 342 F. App'x 15, 17 (5th Cir. 2009) (per curiam), which applied *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992)), *adopted by* 2020 WL 619665 (S.D. Tex. Feb. 10, 2020).

Freedman's allegations fall well short of the Rule 9(b) standard. His pleading offers bare, conclusory assertions that Shellpoint created false or fraudulent documents or engaged in false or fraudulent practices. Having failed to respond, Freedman also does not suggest that he possesses additional facts that could bolster his allegations—much less the requisite evidence to raise a genuine issue of material fact on this claim. Accordingly, his fraud-based theory should be rejected.

### 3. Freedman presented no evidence supporting his quiet title claim.

Freedman's last basis for declaratory relief requests that the Court quiet title in his favor. A quiet title claim "relies on the invalidity of the defendant's claim to the property." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). "To establish a quiet title claim, a plaintiff must show the following: (1) an interest in specific property; (2) that title to the property is affected by defendants' claim; and (3) that the claim, although facially valid, is invalid or unenforceable." *Trotter v. Bank of Am., N.A.*, 2013 WL 12106138, at *4 (S.D. Tex. June 28, 2013) (citing

13

*Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, writ denied)). To obtain relief, a party "must prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Hahn v. Love*, 321 S.W.3d 517, 531-32 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (collecting authorities).

No evidence suggests that any competing claim to the Property exercised by Shellpoint, on US Bank Trust's behalf, is invalid or otherwise unenforceable. Instead, Shellpoint's uncontroverted evidence shows that US Bank Trust holds both the deed of trust and underlying note, that the instruments were recorded in the public records, and that US Bank Trust properly authorized Shellpoint to service the mortgage. *See supra* Part II.A.1. Freedman has not raised a fact issue on his quiet title claim.

In sum, Freedman failed to substantiate his request for declaratory relief. Summary judgment is therefore warranted.

### B.   There is no evidence that Shellpoint breached the contract.

The same evidence addressed above negates Freedman's breach-of-contract claim. To prevail on this claim, Freedman must show that (1) he and Shellpoint had a valid contract; (2) he tendered performance; (3) Shellpoint breached the contract; and (4) he sustained damages resulting from the breach.

14

*See Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (per curiam) (applying Texas law).  This claim fails on multiple elements.

Freedman cannot satisfy the second element for his breach-of-contract claim because he did not tender performance by paying the loan.  Records show that Freedman defaulted on the loan starting May 1, 2020.  *See* Dkt. 26-1 at 5.

On the third element, Freedman submitted no evidence that Shellpoint breached any contractual obligations, whether before or after he defaulted on the loan.  To the contrary, records reflect that Shellpoint properly sent Freedman a notice of default and opportunity and cure, a notice of acceleration, and a notice of foreclosure.  *See* Dkt. 26-7 through 26-12 (DX-A-6 through DX-A-11).  Moreover, nothing in the record supports Freedman's insinuation that Shellpoint violated an unspecified obligation to provide loss-mitigation options.[3]  *See* Dkt. 1-3 at 3.  Ample correspondence shows that Shellpoint repeatedly contacted Freedman to address his options.  *See* Dkt. 26-15 (DX-A14, numerous letters).  The breach-of-contract claim is barred.

    **C.**    **Texas Property Code § 5.065 does not apply.**

Freedman's last claim asserts that Shellpoint violated Section 5.065 of the Texas Property Code.  This provision applies to "an executory contract for

---

[3] Indeed, Freedman's lack of supporting evidence precludes all claims asserting that Shellpoint wrongfully failed to provide loss mitigation, whether under a breach of contract theory or otherwise.

15

the conveyance of real property." Tex. Prop. Code § 5.065. It "was enacted to protect purchasers who execute a contract for deed." *Gilliam v. JPMorgan Chase Bank, N.A.*, 2019 WL 2648017, at *6 (S.D. Tex. June 27, 2019) (quoting *Weaks v. White*, 479 S.W.3d 432, 439 (Tex. App.—Tyler 2015, pet. denied)). "A contract for deed, unlike a typical secured transaction involving a deed of trust, is a financing arrangement that allows the seller to maintain title to the property until the buyer has paid for the property in full." *Santarose v. Deutsche Bank Nat'l Tr. Co.*, 2020 WL 13669040, at *3 n.2 (S.D. Tex. Apr. 7, 2020) (quoting *Morton v. Nguyen*, 412 S.W.3d 506, 509-10 (Tex. 2013)).

But Freedman's note was secured by a deed of trust. *See* Dkt. 26-2 (DX-A-1); Dkt. 26-3 (DX-A-2). He did not execute a contract for deed that implicates Section 5.065. *See, e.g.*, *Santarose*, 2020 WL 13669040, at *1, 3 (reaching same conclusion for analogous secured loan); *Black v. Newrez LLC*, 2024 WL 1775343, at *3 (S.D. Tex. Apr. 2, 2024) (Bryan, M.J.) (same). Shellpoint is therefore entitled to summary judgment on Freedman's Section 5.065 claim.

### Recommendation

For the foregoing reasons, it is **ORDERED** that:

- Plaintiff Marvin Freedman's "motion" (Dkt. 20) that constitutes a pleading not authorized by Fed. R. Civ. P. 7(a) is **TERMINATED**;

- that Freedman's motion for sanctions (Dkt. 21) is **DENIED**; and

16

- that Freedman's motion for extension to effectuate service of process (Dkt. 27) is **DENIED**.

It is further **RECOMMENDED** that Defendant Shellpoint Mortgage Servicing's motion for summary judgment (Dkt. 26) be **GRANTED**, and that the Court enter a final judgment pursuant to Fed. R. Civ. P. 58(a), stating that Freedman shall take nothing on his claims.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on June 12, 2024, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge